IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JAMES BLACKWELL, #224-824<br>Plaintiff, | * |
| v. | * CIVIL ACTION NO. RDB-13-1947 |
| WARDEN WEBB, et al.,<br>Defendants. | * |

\*\*\*

## MEMORANDUM OPINION

Plaintiff filed the above captioned civil rights complaint pursuant to 42 U.S.C. §1983 on July 3, 2013. ECF No. 1. Pending is Defendant Wexford[1] Health Services' Motion to Dismiss, or in the alternative Motion for Summary Judgment (ECF No. 13) and Correctional Defendants Sgt. Colliflower,[2] Commissioner Stouffer, Warden Webb, and Capt. Wise's Motion to Dismiss, or in the alternative Motion for Summary Judgment. ECF No. 20. Plaintiff has responded. ECF No. 18.[3] Defendant Wexford has filed a reply. ECF No. 19. Upon review of papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow the Motions to Dismiss, or in that alternative for Summary Judgment WILL BE GRANTED.

### Background

---

[1] Medical Technician Kathy Blackan and Amanda Roberts have not been served with the Complaint. For the reasons that follow even if they had properly been served, they would be entitled to summary judgment.

Further, while Richard Sampong has been served with the Complaint he has not yet filed a dispositive motion. It appears that this is an oversight as he is represented by the same counsel as represents Wexford. Plaintiff's Complaint against Sampong can be resolved on the documents presented.

[2] The Clerk shall be directed to correct the docket to reflect the correct spelling of Defendant's name.

[3] To the extent Plaintiff raises additional claims of denial of medical care in terms of interruption in psychiatric medication, lack of provision of psychiatric services, understaffing by Wexford, improper prescription of NSAIDS, lack of cortisone injections to his knee, etc., in his opposition (ECF No. 18), those claims are not property before the Court and will not be considered here.

1

By way of amended complaint, the pro se[4] Plaintiff, confined to the Maryland Correctional Institution-Hagerstown (MCI-H), a Maryland Division of Corrections (DOC) facility, alleges that he was denied prescribed medication to treat HIV[5] for approximately one week in June of 2013. ECF Nos. 1 & 4. He also alleges that Correctional Defendants Wise, Colliflower, Webb, Stouffer, and Roberts interfered with his administrative remedy process and were deliberately indifferent to his serious medical needs. *Id.*

Specifically, Plaintiff states that on June 14, 2013, he turned in his medication reorder sticker for HIV medication to Kathy Blackan, the medical technician. Blackan advised that she would submit the order. The following day, Plaintiff asked Blackan about his medication. Blackan asked Plaintiff if he still had the reorder sticker. Plaintiff told her that he had given it to her the day before but he had the blister card with him. Blackan took the blister card and advised Plaintiff that she would reorder the medication. ECF No. 4.

On June 21, 2013, Plaintiff advised Medical Technician "Mrs. Barbara" that he had not received his medication since June 15. Plaintiff was advised that he would receive the medication that evening. However, when he asked Medical Technician "Ms. Mercer" that evening if his medication had been delivered she advised it had not. ECF No. 4.

Plaintiff alleges that night he began to lose his voice and suffer from night sweats and diarrhea. He had a friend contact correctional staff. Tier Officer McCoy called medical who advised that the medication had been ordered and was in the medical unit. Later that evening, Plaintiff was taken to the 3rd floor hospital. Once there, Plaintiff received his medication and "Mrs. Barbara"

---

[4] As a self-represented litigant, Plaintiff is entitled to liberal construction of his pleadings. *See, e.g. Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519 (1972) (requiring liberal construction of pro se pleadings).
[5] The human immunodeficiency virus.

advised Plaintiff that his medication had been inside the cart but was turned backward and thus not delivered. *Id.*

Plaintiff states that on June 28, 2013, he contacted Warden Webb about his problem and requested that his blood be drawn. Plaintiff states that he advised Webb that he required the blood draw because physicians at Johns Hopkins advised him that if he missed his medication for more than 3 days it would no longer be effective and he would need another "cocktail." Plaintiff states that the Warden emailed the medical department but the blood test was not ordered. *Id.*

On July 12, 2013, Plaintiff states he saw Physician's Assistant Richard Sampong. Plaintiff states that he gave Sampong his complete history regarding his HIV status and medication regimen and requested that his blood be drawn, but Sampong refused to order the blood draw, advising Plaintiff that he was not in immediate danger and the blood test would be performed in September. *Id.*

Plaintiff states that since missing his medication he periodically loses his voice and suffers from diarrhea, night sweats, and loss of appetite. He states that he feels tired 80% of the time and needs to take naps. *Id.*

Plaintiff states that Defendants Colliflower, Wise and Stouffer did nothing to assist in the matter. He states that Colliflower and Wise "stopped due process" and Stouffer conspired to violate his civil rights. *Id.* Plaintiff states that Wise refused to sign his inmate grievance form regarding his complaints about the failure to deliver his medication, despite his requests and a request from his brother, who called the facility. *Id.* He also alleges that Colliflower delayed in signing off on his grievance in deliberate disregard for Plaintiff's serious medical needs. *Id.*

The uncontroverted medical records demonstrate that Plaintiff is HIV positive. In October, 2011, he was incarcerated at the Western Correctional Institution in Cumberland, Maryland and

evaluated by medical personnel at Johns Hopkins Medical Center. ECF No. 13, Ex. 1. Plaintiff's viral load was low and it was determined that he should be placed on a "friendlier" drug regimen. On December 13, 2011, he was taken off Sustiva and Combivir and placed on Atripla. *Id.*, Ex. 1, p. 1.

Plaintiff was transferred to MCI-H on April 3, 2013. *Id.*, Ex. 1, p. 3-7. Plaintiff receives Atripla as a "Keep on Person" (KOP) prescription. *Id.*, Ex. 2. During the time at issue, Plaintiff's prescription for Atripla was valid from April 26, 2013 to August 16, 2013. *Id.* With KOP medicine the inmate is provided a supply of the medication to keep in his custody and to self-administer as prescribed. Additionally, KOP medication comes with a sticker identifying the medication, the inmate to whom it is prescribed, and its start and stop date. To refill the prescription, inmates are to remove the sticker and attach it to a sick call slip requesting a refill which is then submitted to medical staff. *Id.* Inmates are advised that a minimum of four days are required to refill a prescription and failure to follow the procedures outlined may result in delayed or missed doses. *Id.* and ECF No. 18, Attachments.

Plaintiff was provided a 30-day KOP supply of Atripla on May 3, 2013. *Id.*, Ex. 2. In accordance with procedure, Plaintiff should have submitted a refill request on or about May 29, 2013; however there is no record Plaintiff submitted a sick call slip requesting a refill of the medication at that time or any time in the following weeks. *Id.*

On June 11, 2013, four days before Plaintiff alleges his medication ran out, he submitted a sick call slip complaining of seasonal allergies and requesting Cortisone shot for his knee. *Id.*, Ex. 1, p. 71. Plaintiff did not request a refill of the HIV medication. The following day, Plaintiff was seen by Nurse Marie Nguimbus. *Id.*, Ex. 1, p. 11-12. Plaintiff complained of not being seen by a doctor and requested a steroid shot and allergy medication. Plaintiff was observed in a great deal of pain. He did not, however, mention or request a refill of his HIV medication. *Id.*

4

On June 14, 2013, the date Plaintiff states he requested his HIV medication refill, Plaintiff was seen by Physician's Assistant Kevin McDonald for a steroid injection. *Id.*, Ex. 1, p. 13-15. McDonald ordered a full assessment of Plaintiff's knee and hips. There is no indication that Plaintiff requested a refill of HIV medication. *Id.*

On June 19, 2013, blood samples were obtained from Plaintiff. *Id.*, Ex. 1, p. 80-83. The laboratory results, obtained on June 25, 2013, showed Plaintiff's HIV viral levels as undetectable. *Id.*, Ex. 1, p. 80-83 and Ex. 2.

On June 21, 2013, the pharmacy received Plaintiff's request to refill his prescription. *Id.*, Ex. 2. Plaintiff received the medication on June 23, 2013. *Id.*, Ex. 1, p. 100 and Ex 2.

On July 3, 2013, Plaintiff was seen for a psychology evaluation. *Id.*, Ex. 1, p. 16-25. Plaintiff reported he was compliant with medication and reported occasional dizziness and sleepiness. He did not report missing HIV medication or discuss complaints of anxiety or emotional distress caused by missing his medication. *Id.*

On July 11, 2013, Plaintiff was seen by Richard Sampong, P.A. *Id.*, Ex. 1, p. 26-27. Sampong discussed the results of the June 19, 2013, laboratory test with Plaintiff. He was advised that his viral load showed undetectable level of HIV. Plaintiff stated he was compliant with his HIV medication. He did not voice any complaints regarding missing HIV medication or his HIV status or mental health. Sampong ordered a laboratory study of Plaintiff for September, 2013. Sampong renewed Plaintiff's Atripla prescription through November 11, 2013. *Id.*

On July 16, 17, and 18, 2013, Plaintiff was seen by various medical provides. The record contains no mention of missed HIV medication or any complications resulting therefrom. *Id.*, Ex. 1, p. 28-35. On September 9, 2013, Plaintiff's blood was drawn. The results of the laboratory study were

obtained on September 12, 2013 and showed Plaintiff's viral load was within normal limits and his HIV remained controlled and stable. *Id.*, Ex. 1, p. 85-87, Ex. 2.

Standard of Review

A.  Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) (6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require Defendant to establish "beyond doubt" that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-62 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 562. The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In reviewing the Complaint in light of a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the Court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the Plaintiff. *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a

complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the Complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. Thus, a Complaint need only state "enough facts to state a claim to relief that is plausible on its face." *Id.* 570.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

B. Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## Analysis

A. Respondeat Superior

Plaintiff's complaint against Defendants Stouffer, Webb, and Wexford Health Services is based solely upon the doctrine of *respondeat superior,* which does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983).

Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates'' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). In order to demonstrate liability of supervisory officials, there must be evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d

9

791, 799 (4th Cir. 1994). Plaintiff has pointed to no action or inaction on the part of Defendants Stouffer, Webb and Wexford Health Services that resulted in a constitutional injury, and accordingly, his claims against them shall be dismissed. The Plaintiff's claims focus on the delivery of primary health care: the failure to approve certain medication; and the failure to provide specialty services. These claims are properly asserted against the direct health care provider(s) during the time at issue.[6]

B. Eighth Amendment

The Eighth Amendment prohibits "'unnecessary and wanton infliction of pain' by virtue of its guarantee against cruel and unusual punishment." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the

---

[6] Mere disagreement with a course of treatment does not provide the framework for a federal civil rights complaint. *See Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).

serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer*, 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown* 240 F. 3d at 390; citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F. 3d 164, 166 (4th Cir. 1998). Mere disagreement with a prescribed course of treatment is insufficient to establish an Eighth Amendment claim of deliberate indifference. *See Russell v. Sheffer*, 528 F. 2d 318, 319 (4th Cir. 1975).

The Correctional Defendants were not involved in Plaintiff's medical care. There is no evidence that they had any direct personal involvement in rendering Plaintiff's medical care, nor is there any indication that any of the named Correctional Defendants impeded Plaintiff's access to medical care. To the contrary, when Plaintiff advised Webb of the difficulty in getting his medication and need for a blood test, Webb contacted the medical department on his behalf. Likewise, when Wise was contacted by Plaintiff's friend regarding the interruption in Plaintiff's medication, he

contacted the medical department to inquire regarding the status of the prescription and then arranged for Plaintiff to be transported to the medical unit to receive the medication. Correctional staff are not responsible for the actions of medical staff, moreover, correctional staff are permitted to rely on the expertise of medical staff in treating Plaintiff. As such, the Correctional Defendants are entitled to summary judgment.

As to Plaintiff's medical providers, they too, if properly served, would be entitled to summary judgment. While it appears Plaintiff was without his prescribed HIV medication for approximately one week, it appears that Plaintiff is at least in part responsible for the disruption in medication for failing to follow the procedures for requesting a renewal.[7] Even assuming Plaintiff bore no responsibility for the delay in providing him medication, the allegations contained herein are nothing more than negligence: the medical providers were not deliberately indifferent to Plaintiff's medical needs, but rather erred in processing his request and/or in realizing that the medication was on the medication cart. A showing of mere negligence is insufficient to state an Eighth Amendment claim for denial of medical care. *See Farmer*, 511 U.S. at 835. An "inadvertent failure to provide medical care, while perhaps sufficient to support an action for malpractice will not constitute a constitutional deprivation redressable under [42 U.S.C. 1983]." *Estelle*, 429 U.S. at 104. Additionally, Plaintiff's claim that he was denied additional blood work is unavailing. Inmates do not have a constitutional right to the treatment of their choice and mere disagreements between medical staff and an inmate over the necessity or extent of a particular treatment do not rise to a constitutional injury. *Estelle* 429 U.S. at 105-106.

Lastly, Plaintiff has failed to demonstrate any injury as a result of the brief disruption in his

---

[7] Plaintiff states that as a protective custody inmate he was not required to put his refill sticker on a sick call slip, but rather protective custody inmates hand in their refill stickers either to a nurse in a locked room or to the nurse doing sick call rounds on the tier. ECF No. 18.

medication. Between May and November, 2013, Plaintiff submitted eight sick call slips and a letter to the medical supervisor. None of the documents mention missing HIV medications or related complaints. ECF No. 13, Ex. 1, p. 69-77. Further, between May and November, 2013, Plaintiff was seen my medical staff at least 19 times. None of the medical records contain any complaints of missing HIV medication or related complications. *Id.*, Ex. 1, p. 1-68. Moreover, Plaintiff's blood work, taken after the missed doses of HIV medication show his viral load remained undetectable. *Id.*, Ex. 1, p. 85-87 & Ex. 2. Dr. Mulugeta Akal avers that Plaintiff's laboratory results from June 25 and September 9, 2013, demonstrate Plaintiff's HIV condition remained stable and well controlled. *Id.* Ex. 2. In light of the foregoing, Defendants are entitled to summary judgment as to Plaintiff's claim of denial of medical care.

C.      Administrative Remedy Process ("ARP")

To the extent Plaintiff alleges there were problems with the processing of his administrative remedy requests, his claim likewise fails. While the long standing rule has been that prisoners have no constitutional right to participate in an institutional grievance procedure, *see Adams v. Rice*, 40 F. 3d 72, 75 (4th Cir. 1994), with the passage of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), the issue is less clear. The PLRA requires exhaustion of administrative remedies before a federal action concerning prison conditions may be filed by a prisoner. The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further clarification regarding exhaustion as a pleading requirement was announced by the United States Court of Appeals for the Fourth Circuit in *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F. 3d 674 (4th Cir. 2005), wherein the court held, "an inmate's

failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise properly raised by the defendant." *Id.* at 681. To the extent that a prisoner's attempts to exhaust the administrative remedy process are thwarted by prison officials' misconduct, that evidence may be presented in response to the affirmative defense. *Id.* at 682. Thus, an inability to access the administrative remedy procedure based on an alleged refusal by prison officials to enforce the rules governing the process does not run afoul of the due process clause. Assuming, *arguendo*, that Defendants Wise and Colliflower did not satisfactorily investigate or respond to the Plaintiff's remedy requests in a timely fashion, Plaintiff's claim fails as he has not alleged, much less demonstrated, any injury as a result of the alleged failure to sign off or process his ARPs.

## Conclusion

For the reasons stated, Plaintiff's complaint against Wexford Health Services, Warden Webb, Commissioner Stouffer, Kathy Blackan, and Amanda Roberts shall be dismissed. Summary judgment is granted in favor of Defendants Capt. Wise, Sgt. Colliflower and Richard Sampong.[8] A separate Order shall be entered in accordance with this Memorandum Opinion.

Date: June 24, 2014

                                                      /s/
                                      RICHARD D. BENNETT
                                      UNITED STATES DISTRICT JUDGE

---

[8] Having found no constitutional violation, the Court need not address Defendants' claim of qualified immunity.